# United States Court of Federal Claims

No. 15-915
Filed: November 29, 2016

_____

)
LION FARMS, LLC,                                    )
                                                    )
                         Plaintiff,                 )
                                                    )
              v.                                    )
                                                    )
THE UNITED STATES,                                  )
                                                    )
                         Defendant.                 )
_____

*James A. Moody*, James A. Moody Law Office, Washington, DC, attorney for plaintiff.

*Brian A. Mizoguchi*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION AND ORDER

***SMITH*, Senior Judge**

This case comes before the Court on defendant's motion to dismiss. Plaintiff, Lion Farms, LLC, seeks just compensation under the Fifth Amendment Takings Clause for reserve tonnage raisins taken from raisin growers by the United States Department of Agriculture ("USDA" or "Agency"). Plaintiff argues that it was never compensated for the Raisin Administrative Committee's ("Committee") taking of his reserve raisins throughout 2006-2010. Defendant alleges that plaintiff's claims for the 2006-07, 2007-08, and 2008-09 crop years should be dismissed because they are barred by the statute of limitations. Defendant's motion to dismiss is fully briefed and ripe for review.

## I.       Background

During the Great Depression, Congress established the Agricultural Marketing Agreement Act of 1937 ("AMAA") in order to help farmers obtain fair value for their agricultural productions. *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1358 (Fed. Cir. 2005) (citing *Pescosolido v. Block*, 765 F.2d 827, 828 (9th Cir. 1985)); 7 U.S.C. § 602 (2000). The AMAA directs the Secretary of Agriculture ("Secretary") to issue "marketing orders" which regulate the marketing and sale of agricultural commodities. 7. U.S.C. § 608c (2012). The Act

allows the Secretary to "issue marketing orders, upon the request of the affected producers, regulating the sale and delivery of various commodities, including raisins, 'in order to avoid unreasonable fluctuation in supplies and price.'" *Id.* (citing *Parker v. Brown*, 317 U.S. 341, 368 (1943); *Kyer v. United States*, 369 F.2d 714, 716-17 (1966), *cert. denied*, 387 U.S. 929 (1967); 7 U.S.C. §§ 608c, 602(4) (2000)).

On or before August 15 of each crop year, the Committee meets to review shipment and inventory data and "other matters relating to the quantity of raisins of all varietal types." 7 C.F.R. § 989.54(a). After the review, the Committee typically recommends a reserve pool, at which point the USDA usually implements the reserve by issuance of a final rule, which determines the percentage of each farmer's crop that will be "free tonnage" and the percentage that will be "reserve tonnage." 7 C.F.R. § 989.55. Then, on or about October 5 of each year, raisin handlers are required to set aside a certain percentage of their raisins as the reserve tonnage for the current crop year. 7 C.F.R. § 989.166(b)(1).

Once the reserve raisins have been set aside, the Committee "acquires title to the reserve raisings that have been set aside, and decides how to dispose of them in its discretion." *Horne v. Dep't of Agriculture*, 135 S. Ct. 2419, 2424 (2015). Once the Committee determines what to do with the reserve raisins, the proceeds from those raisins are used to pay the Committee's administrative expenses and export subsidies to certain handlers. Any remaining proceeds are given to the growers on a pro-rata basis. 7 C.F.R. §§ 989.53(a), 989.66(h). On June 22, 2015, the Supreme Court held in *Horne v. Dep't of Agriculture*, that the California Raisin Handling Order's reserve pool requirement was "a clear physical taking" that violated the Fifth Amendment's Takings Clause and for which just compensation was due. 135 S. Ct. at 2428.

Plaintiff alleges that, in each of the 2006-07, 2007-08, 2008-09, and 2009-10 crop years, plaintiff's "final grower equity," or the amount Lion Farms was to be paid, was $0. Complaint (hereinafter "Compl.") at 5-6. Plaintiff further alleges that the reserve pool raisins were taken without just compensation. *Id.* Defendant argues that the Court does not have jurisdiction over the 2006-07, 2007-08, and 2008-09 crop years, as each of those claims accrued more than six years prior to the August 26, 2015 date on which Lion Farms filed this claim, and are thus barred by the statute of limitations. Defendant's Motion to Dismiss (hereinafter "MTD") at 8.

## II.   Discussion

### A.   Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act explicitly waives the

sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).  Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

When the Court's subject matter jurisdiction to hear a case is challenged, the plaintiff has the burden of establishing by a preponderance of the evidence that this Court has jurisdiction over its claims.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

Summary judgment is appropriate when the evidence indicates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law.  *Anderson*, 477 U.S. at 248, 250.  In determining the propriety of summary judgment, the Court will not make credibility determinations, and will draw all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## B.      Statute of Limitation

Defendant argues in its motion to dismiss that plaintiff's takings claims for the 2006-07, 2007-08, and 2008-09 crop years are barred by the statute of limitations.  MTD at 9.  In making this argument defendant points out that the takings claims ripened in mid-October of each crop year and argues that plaintiff only had 6 years from each crop year's mid-October taking during which to make their claims without running afoul of the statute of limitations.  *Id.*  Essentially, defendant argues that plaintiff's earliest potential claim not barred by the statute of limitations would be for the 2009-10 year, as plaintiff filed this claim on August 26, 2015.  This Court does not agree.

In its response to defendant's motion to dismiss, the plaintiff mentions the accrual suspension rule.  P's Response to MTD (hereinafter "P's Resp.") at 1.  Plaintiff alleges that "[r]easonable uncertainty regarding either element, whether property was taken, [*sic*] and the amount of compensation to be paid, defeats claim accrual." *Id.* at 3.  Plaintiff then expounds on this by stating that "[t]he 'taking' remains uncertain as a matter of both fact and law until USDA issued a the final rule…[and] the amount of compensation remains uncertain until the pool closing…so the 'clock' does not begin to run until the amount of that compensation is revealed to be less than the 'just' amount." *Id.*  This analysis is incorrect.  Under the Fifth Amendment, a

physical taking is "'a permanent and exclusive occupation by the government that destroys the owner's right to possession, use, and disposal of…property.'" *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1357 (Fed. Cir. 2006) (quoting *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1353 (Fed. Cir. 2002)); *see Otey Mesa Property L.P. v. United States*, 86 Fed. Cl. 774, 786 (2009) (citations omitted).  Plaintiff lost the use of its property when the raisins were designated to the reserve pool, typically in mid-October of each of the 2006-07, 2007-08, 2008-09, and 2009-10 crop years.

Additionally, plaintiff has applied the accrual suspension rule in a novel and incorrect way.  Typically, the accrual suspension rule "suspends the statute of limitations when "an accrual date has been ascertained, but plaintiff does not know of his claim."  *Petro-Hunt,* 90 Fed. Cl. at 61 (quoting *Japanese War Notes Claimants Ass'n, Inc. v. United States*, 373 F.2d 356, 358-58 (Ct. Cl. 1967)).  Essentially, the accrual suspension rule suspends the accrual of a claim against the United States, "for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed."  *Id.* (quoting *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003)).  This rule applies when "the change in circumstance arises out of a decision that overrules or alters prior precedent, with the claim deemed to have been tolled until the modifying decision was made."  *Id.*

Defendant argues, in the alternative, that the accrual suspension rule does not apply here because the decision in *Evans* was not a binding precedent.  Defendant's Reply in support of MTD (hereinafter "D's Reply") at 18.  Courts must look to the reality of a decision's effect, not just to the formal question of whether the decision is binding precedent.  It would certainly raise ethical questions for an attorney to file litigation in a case where the client was sure to lose.  In such a case the attorney would be wasting the client, the government, and the Court's time and resources.  In cases where the facts are dramatically different or a long period has gone by since the original decision there may be an ethical basis for relitigating an issue.  However, the plaintiff and its attorney should not be made to speculate that filing may breach an ethical duty and non-filing may forfeit a potential claim.  Such a legal standard would undercut rational legal decision making in a changing world.  It is important for courts to look not only to the letter of the law, but also to principles of equity in making determinations.  The decision in *Evans*, while not technically binding, effectively barred plaintiff from making a takings claim.  It was not until the decision in *Horne* that plaintiff's claims were legally defensible.  It would be unreasonable to expect the plaintiff to file a takings claim that it reasonably believed was barred by *Evans* precedent.  As such, we must deny defendant's partial motion to dismiss the claims during the 2007-08, 2008-09, and 2009-10 crop years.

**III.**    **Conclusion**

For the reasons set forth above, defendant's partial MOTION to dismiss or in the alternative for summary judgment is **DENIED**.  On or before Tuesday, December 20, 2016, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge